362

[986 NYS2d 740]

WILLIAM DUGAN et al., on Behalf of Themselves and All Other
Persons Similarly Situated, Plaintiffs, v LONDON TERRACE
GARDENS, L.P., Defendant.

JAMES DOERR, on Behalf of Himself and All Other Persons
Similarly Situated, Plaintiffs, v LONDON TERRACE GARDENS,
L.P., Defendant.

Supreme Court, New York County, September 9, 2013

## APPEARANCES OF COUNSEL

*Emery Celli Brinckerhoff & Abady LLP*, New York City (*Matthew D. Brinckerhoff* and *Adam R. Pulver* of counsel), and *Himmelstein, McConnell, Gribben, Donoghue & Joseph*, New York City (*William Gribben* and *Ronald S. Languedoc* of counsel), for William Dugan and others, plaintiffs.

*Bernstein Liebhard LLP*, New York City (*Ronald Aranoff, Christian Siebott, Tania T. Taveras* and *Gabriel G. Galletti* of counsel), for James Doerr, plaintiff.

*Eric T. Schneiderman, Attorney General*, New York City (*Michael J. Siudzinski* of counsel), for third-party defendant.

*Borah, Goldstein, Altschuler, Nahins & Goidel, P.C.*, New York City (*Robert D. Goldstein* and *Paul N. Gruber* of counsel), and *Proskauer Rose LLP*, New York City (*Richard M. Goldstein* and *Harry Frischer* of counsel), for defendant.

## OPINION OF THE COURT

Lucy Billings, J.

## I. Background

Plaintiffs in these two actions, on behalf of themselves and similarly defined classes of tenants at defendant's building complex, London Terrace Gardens, claim that defendant charged them excessive rents under applicable rent-stabilization laws and equivalent rent-control laws. (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270 [2009].) London Terrace Gardens consists of almost 1,000 apartments. Plaintiffs claim defendant unlawfully removed over 50% of these units from rent stabilization or control and charged its tenants excessive rent.

The court's prior decision, affirmed by the First Department, denied defendant's motion to dismiss or stay each action to permit the New York State Division of Housing and Community Renewal (DHCR) to resolve plaintiffs' claims. (*Dugan v London Terrace Gardens, L.P.*, 34 Misc 3d 1240[A], 2011 NY Slip Op 52501[U] [Sup Ct, NY County 2011], *affd* 101 AD3d 648 [1st Dept 2012].) Pursuant to that decision, the court retains jurisdiction to decide whether plaintiffs' apartments are subject to the rent-stabilization and control laws at issue, whether the tenants have been charged excessive rent, and what rent was to have been charged for what past period and is to be charged currently. This decision addresses plaintiffs' motions to consolidate the two actions and certify a plaintiff class and third-party defendant DHCR's motion to dismiss defendant's third-party complaints in each action. Plaintiffs have resolved by a stipulation their motions insofar as they sought to appoint lead counsel for the class.

## II. The Applicable Rent Stabilization and Control Laws and Their Interpretation

The "luxury decontrol" provisions of the New York City Rent and Rehabilitation Law (Rent Control Law) and Rent Stabilization Law of 1969 allow a landlord to remove apartments from rent control or stabilization and charge market rent when tenants' incomes exceed specified thresholds. (Administrative Code of City of NY §§ 26-403.1, 26-504.3.) Once a landlord removes apartments from rent regulation and charges market rent, the landlord is no longer subject to the various other requirements attendant to rent regulation. These companion obligations include renewal of the tenants' leases for a prescribed period,

adherence to the original lease terms with limited rent increases, provision of the same services, and liability for harassment of tenants.

Where landlords receive a New York City "J-51" tax exemption or abatement for their apartments under Real Property Tax Law § 489 (1) (a) and Administrative Code §§ 11-243 and 11-244 (formerly §§ J51-2.5 and J51-5.0), the apartments are subject to rent regulation (Administrative Code §§ 11-243 [i] [1]; 26-504 [c]), and the luxury decontrol provisions do not apply. (Administrative Code §§ 26-403 [e] [2] [j], [k]; 26-504.1, 26-504.2 [a].) DHCR's Rent Stabilization Code and its Rent and Eviction Regulations for rent-controlled units, interpreting the luxury decontrol statutes, however, allowed a landlord to avail itself of luxury decontrol of apartments that already were rent-stabilized or controlled when the landlord began receiving a J-51 tax exemption or abatement for those apartments. DHCR's regulations also allowed a landlord to continue charging market rent for apartments already deregulated under luxury decontrol when the landlord began receiving J-51 tax benefits for the building, but the New York City Department of Housing Preservation and Development (HPD) had reduced them in proportion to the percentage of deregulated apartments in the building.

*Roberts v Tishman Speyer Props., L.P.* (13 NY3d at 285-286) determined that this regulatory interpretation (9 NYCRR former 2520.11 [r] [5] [i]; [s] [2] [i]) of the Rent Stabilization Law (Administrative Code §§ 26-504.1; 26-504.2 [a]) was contrary to the statutes' terms that a landlord may *not* avail itself of luxury decontrol where the apartment "became subject to" rent stabilization "by virtue of receiving" a J-51 tax exemption or abatement. The statutory terms prohibiting luxury decontrol of rent-controlled apartments receiving J-51 tax benefits, Administrative Code of the City of New York § 26-403 (e) (2) (j) and (e) (2) (k), are identical to sections 26-504.1 and 26-504.2 (a), just as DHCR's regulations misinterpreting each statute are comparable. (9 NYCRR former 2200.2 [f] [19] [v]; [20] [ii], now 2200.2 [f] [19] [vii]; 20 [iv]; former 2520.11 [r] [5] [i]; [s] [2] [i], now 2520.11 [r] [7] [i]; [s] [3] [i].)

The *Roberts* ruling, however, in turn raises further issues. The extent to which these issues now have been resolved or will require resolution in this litigation and their suitability for classwide resolution bear on the pending motions.

A. Retroactivity

First is the extent to which defendant's unlawful decontrol of apartments when tenants' incomes exceeded the thresholds for

luxury decontrol, despite defendant's receipt of a J-51 tax exemption or abatement, must be remedied retroactively, requiring the landlord to repay past overcharges to tenants. Related to retroactivity is when plaintiffs' claims accrued and whether they survive under the applicable statute of limitations.

The Appellate Division subsequently has resolved that the Court of Appeals' interpretation in *Roberts* of the Rent Stabilization Law, Administrative Code §§ 26-504.1 and 26-504.2 (a), and the analogous provisions of the Rent Control Law, Administrative Code § 26-403 (e) (2) (j) and (k), is to be applied retroactively. (*Roberts v Tishman Speyer Props., L.P.*, 89 AD3d 444, 445-446 [1st Dept 2011]; *Gersten v 56 7th Ave. LLC*, 88 AD3d 189, 198 [1st Dept 2011].) Retroactive application is warranted primarily because the Court of Appeals' decision did not establish a new principle of law, either by abruptly overruling past precedent on which litigants may have relied, or by resolving an issue for the first time in a way not foreshadowed. (*Gurnee v Aetna Life & Cas. Co.*, 55 NY2d 184, 191-192 [1982]; *Matter of London Terrace Gardens, L.P. v City of New York*, 101 AD3d 27, 31 [1st Dept 2012]; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 197-198; *Matter of Hilton Hotels Corp. v Commissioner of Fin. of City of N.Y.*, 219 AD2d 470, 477 [1st Dept 1995]; *see People v Hill*, 85 NY2d 256, 262-263 [1995]; *People v Favor*, 82 NY2d 254, 262-263 [1993]; *Matter of Americorp Sec. v Sager*, 239 AD2d 115, 117-118 [1st Dept 1997]; *Matter of Taihem F.*, 222 AD2d 322, 323-324 [1st Dept 1995].) Rather than creating a new principle of law, the decision simply construed a statute not judicially construed previously, hence mandating retroactive application. (*Roberts v Tishman Speyer Props., L.P.*, 89 AD3d at 445-446; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 197-198.)

Consequently, since no other judicial principle of law or judicial interpretation governed previously, and only an administrative interpretation was adopted, no caution is necessary in the displacement of a previously relied upon judicial principle or interpretation by a newly announced principle or interpretation. Instead, retroactive operation of the original judicial construction in *Roberts* is necessary to promote its effect. (*Gurnee v Aetna Life & Cas. Co.*, 55 NY2d at 192-193; *Matter of Hilton Hotels Corp. v Commissioner of Fin. of City of N.Y.*, 219 AD2d at 477-478; *see People v Hill*, 85 NY2d at 262-263; *People v Favor*, 82 NY2d at 262, 265-266; *Matter of Americorp Sec. v Sager*, 239 AD2d at 117-118.)

Finally, retroactive application will not impose inequitable results. (*Gurnee v Aetna Life & Cas. Co.*, 55 NY2d at 192-193;

*Matter of Hilton Hotels Corp. v Commissioner of Fin. of City of N.Y.*, 219 AD2d at 477-478; *see People v Hill*, 85 NY2d at 262-263; *People v Favor*, 82 NY2d at 262, 266; *Matter of Americorp Sec. v Sager*, 239 AD2d at 117-118.) Retroactive application of *Roberts* will protect tenants pursuant to the Rent Stabilization and Rent Control Laws, rather than allowing landlords to profit from a faulty administrative interpretation of the statutes. (*Gersten v 56 7th Ave. LLC*, 88 AD3d at 198.)

B. Applicable Statutes of Limitations

To this end, the Appellate Division also refused to impose a statute of limitations, either the four years for rent overcharges (CPLR 213-a; Administrative Code § 26-516 [a]; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 200-201), or the six years for breach of a lease (CPLR 213 [2]; *72A Realty Assoc. v Lucas*, 101 AD3d 401, 402 [1st Dept 2012]; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 199-200), for the purpose of determining the rent regulatory status of apartments claimed to have been illegally deregulated while the landlord received J-51 tax benefits. While no statute of limitations bars plaintiffs' challenge to the regulatory status of their apartments, the court still must determine the operative statute of limitations on the periods of rent overcharges that plaintiffs are entitled to recover should they prevail. In calculating damages for rent overcharges, the limitations period of four years applies to the recovery of overcharges for rent-stabilized apartments. (CPLR 213-a; Administrative Code § 26-516 [a]; 9 NYCRR 2526.1 [a]; *Matter of Cintron v Calogero*, 15 NY3d 347, 355-356 [2010]; *Crimmins v Handler & Co.*, 249 AD2d 89, 91 [1st Dept 1998]; *see Matter of H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d 103, 109 [1st Dept 2007].) A limitations period of two years applies to the recovery of rent overcharges for rent-controlled apartments. (Administrative Code § 26-413 [d] [2]; 9 NYCRR 2206.8 [a] [1].) As plaintiff Dugan and his coplaintiffs also claim breach of contract, the limitations period of six years may govern the calculation of overcharges for which defendant is liable, should plaintiffs prevail on that claim. (CPLR 213 [2].)

C. Decontrol in Proportion to a Reduction in Tax Benefits

Another issue the *Roberts* ruling left unresolved is whether defendant legally may avail itself of luxury decontrol for apartments to which it attributes no J-51 tax benefits, while receiving them for other apartments in its building, because HPD reduced them in proportion to the percentage of decontrolled apartments in the building. The Appellate Division in *Roberts*

held that "*all* apartments in buildings receiving J-51 tax benefits are subject to the RSL during the entire period in which the owner receives such benefits." (*Roberts v Tishman Speyer Props., L.P.,* 62 AD3d 71, 81 [1st Dept 2009] [emphasis added], *affd* 13 NY3d at 284.) In affirming, the Court of Appeals did not repeat that holding, but, when referring to the legislative history of Administrative Code §§ 26-504.1 and 26-504.2 (a), emphasized that it "plainly indicates that 'at no point' would the luxury decontrol provisions apply to *buildings* which 'received' tax exemptions." (*Roberts v Tishman Speyer Props., L.P.,* 13 NY3d at 287 [emphasis added].) In fact the Rent Stabilization Law itself requires that it apply to: "*Dwelling units* in a *building* . . . receiving the benefits of section 11-243 or section 11-244." (Administrative Code § 26-504 [c] [emphases added]; *see Denza v Independence Plaza Assoc., LLC*, 95 AD3d 153, 160-161 [1st Dept 2012].)

D. Preclusion

Related to all the above issues is the extent to which any prior judicial or DHCR adjudicatory decisions specifically regarding plaintiffs' rent levels affect the determination of retroactivity, limitations of plaintiffs' claims, and the lawfulness of decontrol in proportion to a reduction in the tax benefits. A prior DHCR luxury decontrol order may preclude plaintiffs from challenging the removal of apartments from rent regulation, if that issue was litigated fully and decided in a DHCR proceeding, where plaintiffs were provided an opportunity to challenge whether their apartments were to be subject to luxury decontrol. (*Gersten v 56 7th Ave. LLC*, 88 AD3d at 201-202; *see ABN AMRO Bank, N.V. v MBIA Inc.*, 17 NY3d 208, 226 [2011]; *Staatsburg Water Co. v Staatsburg Fire Dist.*, 72 NY2d 147, 153 [1988]; *Ryan v New York Tel. Co.*, 62 NY2d 494, 499 [1984]; *Matter of Metro-North Commuter R.R. Co. v New York State Exec. Dept. Div. of Human Rights*, 271 AD2d 256, 257 [1st Dept 2000].)

III. Plaintiffs' Claims

Plaintiffs bring their actions on behalf of a class of former and current tenants at London Terrace Gardens residing in apartments that were subject to rent-stabilization or rent control, but were treated as unregulated under luxury decontrol since 2003, when defendant began receiving almost $2,000,000 in J-51 tax benefits. Plaintiffs seek a declaratory judgment that these apartments be returned to their prior regulated status,

that any pending petitions before DHCR to deregulate apartments are void, and that any prior deregulation orders by DHCR are void. To return the apartments to regulated status, plaintiffs seek injunctive relief ordering defendant to register the unregulated apartments with DHCR and to offer the tenants renewal leases approved by DHCR. Plaintiffs seek damages equal to the excessive rents charged, plus interest, when plaintiffs' apartments were treated as unregulated during defendant's receipt of J-51 tax benefits.

Plaintiffs in these two actions claim rent overcharges and the related relief outlined above under the Rent Stabilization Law or Rent Control Law. Plaintiff Dugan and his coplaintiffs also claim deceptive business practices, promissory estoppel, breach of the parties' rental contracts, and reformation of those contracts. Plaintiff Doerr also claims defendant's unjust enrichment.

## IV. Consolidation

In the interest of judicial economy, consolidation of the two actions is warranted because they raise common questions of fact and law, and consolidation would cause no discernible prejudice to any party's rights or delay in their adjudication. (CPLR 602 [a]; *Kally v Mount Sinai Hosp.*, 44 AD3d 1010 [2d Dept 2007]; *Amcan Holdings, Inc. v Torys LLP*, 32 AD3d 337, 339 [1st Dept 2006]; *Geneva Temps, Inc. v New World Communities, Inc.*, 24 AD3d 332, 334-335 [1st Dept 2005]; *see Cason v Deutsche Bank Group*, 106 AD3d 533 [1st Dept 2013].) The two actions share common issues because both actions are against the same defendant for illegal deregulation of apartments in London Terrace Gardens. Maintaining the actions separately would pose a risk of inconsistent dispositions. (*Murphy v 317-319 Second Realty LLC*, 95 AD3d 443, 445 [1st Dept 2012]; *Badillo v 400 E. 51st St. Realty LLC*, 74 AD3d 619, 620 [1st Dept 2010].) For these undisputed reasons, and based on defendant's consent to plaintiffs' motion insofar as it seeks to consolidate the two actions, the court grants consolidation under index No. 603468/ 2009, the first filed action. (CPLR 602 [a]; *Badillo v 400 E. 51st St. Realty LLC*, 74 AD3d at 620.)

## V. Class Certification

### A. Waiver of the Statutory Penalty

Absent specific statutory authorization, a class action may not be maintained to recover a penalty created or imposed by a

statute, because such punitive or aggregated damages provide the same incentive as the rationale for class actions: to encourage individuals to sue where they may be entitled to only a minimal recovery. (CPLR 901 [b]; *Sperry v Crompton Corp.*, 8 NY3d 204, 211, 214 [2007].) The Rent Stabilization Law and Rent Control Law and their implementing regulations provide for treble damages as a penalty for a willful rent overcharge. (Administrative Code §§ 26-413 [d] [2]; 26-516 [a]; 9 NYCRR 2206.8 [b] [1]; 2526.1 [a].) Plaintiffs elect to waive the penalty on behalf of the class, however, seeking only compensatory relief for the actual amounts of overcharges plus interest. Class members may opt out of the class to pursue the statutory penalty against defendant.

Contrary to defendant's insistence that a class representative may not forgo the class's claim for a statutory penalty to circumvent CPLR 901 (b), a waiver is permitted as long as (1) the penalty is neither mandatory nor the sole measure of recovery, and (2) class members retain the right to opt out of the class to pursue the punitive relief. (*Downing v First Lenox Terrace Assoc.*, 107 AD3d 86, 89 [1st Dept 2013]; *Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d 630 [1st Dept 2013]; *Gudz v Jemrock Realty Co., LLC*, 105 AD3d 625 [1st Dept 2013]; *Cox v Microsoft Corp.*, 8 AD3d 39, 40 [1st Dept 2004].) Unlike mandatory treble damages provisions that bar class certification (*e.g. Asher v Abbott Labs.*, 290 AD2d 208 [1st Dept 2002]; General Business Law § 340 [5]), the treble damages provisions in Administrative Code §§ 26-413 (d) (2) and 26-516 (a) and 9 NYCRR 2206.8 (b) (1) and 2526.1 (a) supplement the recovery of overcharges and may be awarded only upon a finding of willfulness or bad faith. Therefore the treble damages are neither a sole means of recovery for rent overcharge claims nor mandatory and may be waived on behalf of a class. (*Downing v First Lenox Terrace Assoc.*, 107 AD3d at 89.)

■ Consequently, plaintiffs' waiver of treble damages and allowance for class members to opt out of the class permit plaintiffs to proceed as a class action despite CPLR 901 (b)'s prohibition against a class action that seeks a statutory penalty. (*Downing v First Lenox Terrace Assoc.*, 107 AD3d at 89; *Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d 630 [2013]; *Gudz v Jemrock Realty Co., LLC*, 105 AD3d 625 [2013].) Although Administrative Code § 26-516 (a) and 9 NYCRR 2526.1 (a) denominate plaintiffs' classwide claims for rent overcharges plus interest and attorneys' fees a "penalty," such a term alone

is not dispositive. Interest and attorneys' fees, as well as reimbursement of overcharges, are in fact compensatory forms of relief and thus do not bar class certification under CPLR 901 (b). (*Downing v First Lenox Terrace Assoc.*, 107 AD3d at 90-91; *Gudz v Jemrock Realty Co., LLC*, 105 AD3d at 627.)

B. Forfeiture of Lawful Rent Increases

Plaintiffs claim that, in calculating their damages, due to defendant's noncompliance with rent-stabilization and control registration requirements (Administrative Code § 26-517 [e]; 9 NYCRR 2203.7, 2528.4 [a]), defendant is not entitled to any lawful annual or biannual rent increases adopted by the New York City Rent Guidelines Board (Administrative Code § 26-510 [a], [b]), beyond the base date rent. The base date rent is the legal regulated rent on the last rent registration filed for an apartment or when it became subject to rent regulation. (*See Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin.*, 15 NY3d 358, 365-366 [2010]; *Thornton v Baron*, 5 NY3d 175, 180-181 and n 1 [2005].)

■ Even though defendant maintains that plaintiffs' claim for forfeiture of rent increases is inapplicable here, defendant nonetheless contends that this forfeiture claim under Administrative Code § 26-517 (e) seeks a statutory penalty that bars plaintiffs from proceeding as a class action. Defendant provides no authority for its proposition that plaintiffs' mere invocation of the forfeiture provision, Administrative Code § 26-517 (e), that in fact is inapplicable, even if it is a penalty for purposes of CPLR 901 (b), bars class certification. Nevertheless, because the forfeiture provision does not amount to a penalty, even if it applies, it does not bar class certification.

1. The Forfeiture Provision's Context

Plaintiffs present defendant's forfeiture of its entitlement to Rent Guidelines Board increases as a component of damages for rent overcharges and contend that the forfeiture is not a penalty because the forfeiture provision itself does not dictate that defendant pay a monetary award to plaintiffs. Whether a provision amounts to a penalty depends on the context. (*Sperry v Crompton Corp.*, 8 NY3d at 213.) Even if Administrative Code § 26-517 (e) and 9 NYCRR 2528.4 (a) denominate the forfeiture a "penalty" for a landlord's failure to file rent registrations, again such a denomination is not dispositive. (*Downing v First Lenox Terrace Assoc.*, 107 AD3d at 90-91; *Gudz v Jemrock Realty Co., LLC*, 105 AD3d at 626.) Where the recovery sought is compensatory, lacking a punitive or deterrent purpose or litiga-

tion incentive, the claim is not for imposition of a penalty as contemplated by CPLR 901 (b). (*Gudz v Jemrock Realty Co., LLC*, 105 AD3d at 626.)

Defendant's forfeiture of rent increases equates to its nonentitlement to a statutory benefit. The forfeiture statute thus "penalizes those who violate it but does not provide for the recovery of a penalty" as redress, as necessary to fall under CPLR 901 (b)'s penalty exclusion. (*Pruitt v Rockefeller Ctr. Props.*, 167 AD2d 14, 27 [1st Dept 1991].)

2. Extrapolation from Administrative Code § 26-516 (a) and 9 NYCRR 2526.1 (a) (1)

Notably, Administrative Code § 26-516 (a) and 9 NYCRR 2526.1 (a) (1) specify that the treble damages provision may *not* be imposed to punish defendant based solely on its failure to file rent registrations. Since treble damages still are imposed in many instances where landlords failed to file rent registrations, this prohibition is not against imposing the punitive measure when such a failure has occurred, but only against imposing the measure *as a penalty* for that failure.

Unlike the treble damages recovery available to plaintiffs for rent overcharges, forfeiture of annual or biannual regulated rent increases due to defendant's failure to file rent registrations enhances any overcharge award to plaintiffs by comparatively little. Plaintiffs' only recovery would be the rent increases set by the Rent Guidelines Board, which for the last 15 years average 3.43% for the annual rent adjustment and 6.30% for the biannual rent adjustment. (*See* The City of New York Rent Guidelines Board, Rent Guidelines Board Apartment Orders # 1 through # 45 [1969 to 2014] [June 26, 2013], http://www.nycrgb.org/downloads/guidelines/aptorders2014.pdf.) If treble damages may not be considered a punitive measure for failure to file rent registrations, a far lesser enhancement of a tenant's overcharge award may not be considered punitive either.

3. The Forfeiture Provision's Effects

Regardless of any extrapolation from Administrative Code § 26-516 (a) and 9 NYCRR 2526.1 (a) (1), such a small recovery would not enhance plaintiffs' damages enough to amount to a punitive measure or provide the litigation incentive that the treble damages for willful rent overcharges provide. (*See Sperry v Crompton Corp.*, 8 NY3d at 214; *H.O. Realty Corp. v State of N.Y. Div. of Hous. & Community Renewal*, 46 AD3d at 108.) De-

fendant's very defense to the forfeiture claim reveals its lack of deterrent effect. Defendant maintains, and plaintiffs do not dispute, that it failed to file rent registrations on its assumption that it was exempted from the registration requirements, in reliance on DHCR's long-standing but erroneous interpretation of the law. (*See State of N.Y. ex rel. Grupp v DHL Express [USA], Inc.*, 19 NY3d 278, 286-287 [2012]; *164 Mulberry St. Corp. v Columbia Univ.*, 4 AD3d 49, 60 [1st Dept 2004].) While defendant's reliance on DHCR's statutory interpretation may have been deliberate, plaintiffs have not contended that defendant deliberately flouted the statute or fraudulently overcharged them. Whether that reliance on an administrative interpretation in the absence of a governing judicial interpretation was in good faith or foolhardy, in the absence of purposefully illegal deregulation or fraud, the forfeiture provision does not impose the punitive and deterrent effects on defendant that are intended to constitute a penalty.

4. Governing Appellate Authority

This analysis follows the same reasoning revealed in *72A Realty Assoc. v Lucas* (101 AD3d at 402-403). Simply claiming reliance on DHCR's faulty interpretation, without more, may be insufficient to escape liability for treble damages. (*Id.* at 402.) If, however, defendant demonstrates the absence of fraud or of willful conduct designed to deregulate illegally, plaintiffs still will be entitled to compensation for the overcharges, but this punitive damages measure may not be imposed. (*Id.* at 403.) Similarly, if defendant failed to file rent registrations for apartments on the assumption that they were deregulated legally and exempted from registration requirements, in the absence of any fraudulent conduct, plaintiffs may be entitled to compensation, but defendant will not incur a penalty.

Whether landlords that deregulated apartments while receiving J-51 tax benefits in reliance on DHCR's faulty interpretation are barred from collecting statutory rent increases and whether that forfeiture is a penalty have not been directly addressed. Given the forfeiture provision's relevance in calculating damages for overcharges in post-*Roberts* litigation, however, its applicability and effects are issues that must recur. Yet, it has never impeded class certification in similar actions against landlords for luxury deregulation during their participation in the J-51 program. (*Downing v First Lenox Terrace Assoc.*, 107 AD3d at 90-91; *Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d 630 [2013]; *Gudz v Jemrock Realty Co., LLC*, 105 AD3d 625

[2013].) It has not been found to be a penalty and therefore has not been found to require waiver. For claims against landlords' luxury deregulation during their participation in the J-51 program to proceed as a class action, *only* the treble damages provision has been found to be a penalty requiring waiver. (*Downing v First Lenox Terrace Assoc.*, 107 AD3d at 90-91; *Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d 630 [2013]; *Gudz v Jemrock Realty Co., LLC*, 105 AD3d 625 [2013].)

In this light, denying class certification would contravene the recent and consistent appellate authority approving class actions for claims of illegal deregulation of apartments under the J-51 program and the flexibility afforded under CPLR article 9, "to favor the maintenance of class actions." (*Pruitt v Rockefeller Ctr. Props.*, 167 AD2d at 20.) Absent any currently articulated error in the forfeiture provision's effect as construed above, the court must resolve the issue "in favor of allowing the class action." (*Pruitt v Rockefeller Ctr. Props.*, 167 AD2d at 21; *Liechtung v Tower Air*, 269 AD2d 363, 364 [2d Dept 2000]; *Brown v State of New York*, 250 AD2d 314, 320 [3d Dept 1998]; *see Englade v HarperCollins Publs.*, 289 AD2d 159 [1st Dept 2001].) At this stage of the litigation, certification of a plaintiff class is not to be denied solely on the possibility that the forfeiture is both a penalty in this context and applicable to landlords that relied on DHCR's mistaken interpretation of the law.

C. Standards for Class Certification

One or more members of a class may sue as representative parties on behalf of all class members if plaintiffs meet the following prerequisites. (CPLR 901 [a].) (1) The class is so numerous that joinder of all members is impracticable. (2) Questions of law or fact common to the class predominate over any questions affecting only individual members. (3) The representative parties' claims are typical of the class's claims. (4) The class representatives will protect the class's interests fairly and adequately. (5) A class action is superior to other methods for the fair and efficient adjudication of this controversy.

Plaintiffs, as the parties seeking class certification, bear the burden to present evidence establishing these criteria. (*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d 481, 481 [1st Dept 2009].) The criteria are to be construed liberally in favor of class certification. (*Id.*; *Pruitt v Rockefeller Ctr. Props.*, 167 AD2d at 21.) The court may consider the merits of plaintiffs' claims only to the extent of ensuring those claims are not a sham. (*Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d 420, 422 [1st Dept 2010];

*Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d at 482; *Jim & Phil's Family Pharm. v Aetna U.S. Healthcare*, 271 AD2d 281, 282 [1st Dept 2000].)

1. Numerosity

Plaintiffs' proposed class consists of all past and current tenants of London Terrace Gardens who have been charged or continue to be charged deregulated rents during defendant's receipt of tax benefits under New York City's J-51 program. The proposed class includes all tenants formerly and currently residing in the 558 deregulated apartments. (Aff of Tania Taveras ¶ 7.) As it indisputably would be impracticable to join even 558 potential plaintiffs individually, the proposed class surely satisfies the numerosity requirement for class certification. (*Dabrowski v Abax Inc.*, 84 AD3d 633, 634 [1st Dept 2011]; *Pesantez v Boyle Envtl. Servs.*, 251 AD2d 11, 12 [1st Dept 1998].)

2. Commonality

Common questions of fact and law predominate over individual questions. All class members are current and former tenants residing in deregulated apartments at London Terrace Gardens since defendant began receiving J-51 tax benefits in 2003. The predominant legal claim for all class members is defendant's unlawful deregulation of their apartments while defendant was receiving J-51 tax benefits. The common inquiry for the entire class in determining defendant's liability is whether class members paid deregulated rent during defendant's participation in the J-51 program. If so, then the common predominant questions for the class members include the precise period of defendant's liability and the formula for calculating rent overcharges, questions which will require minimal individualized disputed evidence and to which no conceivable individualized defenses pertain. Because defendant's retroactive liability for its unlawfully excessive rents is resolved, neither is that question subject to individualized defenses nor dependent on individualized evidence as to whether the parties' conduct or other circumstances warrant a retroactive remedy. Once a common formula is developed and applied, determining the extent of defendant's liability will be primarily a methodological exercise. (*Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d at 422-423; *Yeger v E\*Trade Sec. LLC*, 65 AD3d 410, 413 [1st Dept 2009]; *CLC/CFI Liquidating Trust v Bloomingdale's, Inc.*, 50 AD3d 446, 447 [1st Dept 2008].)

Factual questions peculiar to class representatives do not defeat commonality in any event. (*City of New York v Maul*, 14

NY3d 499, 514 [2010]; *Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d at 423; *Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d at 482.) Although calculating damages for individual class members may involve applying specific criteria in the rent-control and rent-stabilization statutes and regulations, any consideration of class members' factual circumstances is confined solely to the calculation of damages and does not predominate over the class's common claims to bar class certification. (*Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d at 631; *Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d at 482; *Englade v HarperCollins Publs.*, 289 AD2d at 160; *Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129, 139-140 [2d Dept 2008].) To accommodate individual considerations in damage calculations further, the court may define subclasses or appoint a special master. (*Godwin Realty Assoc. v CATV Enters.*, 275 AD2d 269, 270 [1st Dept 2000]; *Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d at 142.)

Finally, certification of the class remains subject to modification until disposition of the action. (CPLR 902; *e.g. DeFilippo v Mutual Life Ins. Co. of N.Y.*, 13 AD3d 178, 180 [1st Dept 2004]; *see Matter of Colt Indus. Shareholder Litig.*, 77 NY2d 185, 198 [1991]; *Louisiana Mun. Employees' Retirement Sys. v Cablevision Sys. Corp.*, 74 AD3d 1291, 1293 [2d Dept 2010].) Should the determination of damages require modification of the class definition or decertification, the court may make such accommodations without them deterring class certification at this stage.

3. Typicality

Typicality is satisfied when the named plaintiffs' and the class's claims derive from the same course of conduct and are based on the same legal theory. (*Pludeman v Northern Leasing Sys., Inc.*, 74 AD3d at 423; *Ackerman v Price Waterhouse*, 252 AD2d 179, 201 [1st Dept 1998].) The named plaintiffs' claims in this consolidated action are typical of the classwide claims, as the named plaintiffs seek the same declaratory and injunctive relief sought by the class based on defendant's illegal deregulation of the apartments at London Terrace Gardens while receiving J-51 tax benefits. (*Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d at 631.) The class representatives claim, for themselves and for the class, damages equal to the excessive rents charged, plus interest, when the tenants' apartments were treated as unregulated during defendant's receipt of J-51 tax benefits, all according to the same formula.

### 4. Adequacy of Representation

William Dugan and his coplaintiffs each verified the complaint and attested to their understanding of the action and their ability and willingness to pursue the class's claims. Plaintiff Doerr's affidavit details his ability and willingness to serve as a class representative. As his affidavit simply supplements his complaint, and defendant does not object to the affidavit, despite its untimeliness, the court considers the affidavit a demonstration of Doerr's willingness to take whatever action is necessary to represent the class and relies on the affidavit in determining his suitability as a class representative. (CPLR 2001.)

Nor does defendant object to the named plaintiffs' financial ability to pursue a class action. In any event, the attorney for at least one plaintiff has agreed to advance all litigation expenses. The named plaintiffs' waiver of treble damages on behalf of the class accompanied by a provision for class members to opt out of the class does not implicate the named plaintiffs' capability of serving as class representatives. (*Borden v 400 E. 55th St. Assoc., L.P.,* 105 AD3d at 631.) The court discerns no question as to the competency of the attorneys for the class or conflict of interest that would affect the named plaintiffs' ability or willingness to act in the class's best interest. (*Id.; Ackerman v Price Waterhouse,* 252 AD2d at 202.)

Except for plaintiff Zitis, against whom defendant raises no specific objections, defendant insists that the proposed class representatives either lack a viable claim or otherwise are not typical of the class. Defendant specifically objects to plaintiffs Doerr, Pelaez, and Snyder as lacking any claim because their apartments were removed from rent control and set at market rates before their tenancies, and they failed to challenge the decontrol timely. Because a DHCR order deregulated plaintiff McCurdy's apartment, he similarly may not maintain a claim after failing to challenge his apartment's regulatory status timely. The proposed class definition includes class members whose apartments were deregulated through various means, including the means employed against these named plaintiffs. Nonetheless, the common claim and legal question for all class members in determining defendant's liability remains whether they paid deregulated rent during the period defendant participated in the J-51 program.

Insofar as defendant claims it deregulated apartments legally, pursuant to a decontrol order by DHCR or otherwise, notwithstanding

defendant's receipt of J-51 tax benefits, such a claim is a legal question to be determined. Class members in circumstances similar to the four plaintiffs listed above are part of the class for whom the court must determine whether defendant's deregulation of their apartments was allowable under applicable statutes. Regarding defendant's defense that the statutes of limitations bar these named plaintiffs' claims, not only is this defense also a legal question to be determined, but, for plaintiffs' purpose of challenging the *regulatory status* of apartments deregulated while defendant was receiving J-51 tax benefits, no applicable limitations period bars that fundamental claim. (*72A Realty Assoc. v Lucas*, 101 AD3d at 402; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 199-200.)

Regarding defendant's claim that named plaintiffs Doerr, Dugan, Gagnon, and Kern are former tenants and therefore maintain no interest in pursuing injunctive and declaratory relief regarding the apartments' future regulatory status and rent, these plaintiffs, too, fall within the class definition that includes former tenants of defendant's building. These plaintiffs' tenancy status is typical of the class members who are former tenants and still hold a stake in the overcharge claims against defendant. The remaining class representatives who are current tenants adequately represent the class's interest in pursuing prospective relief.

Negotiated agreements regarding renovations in the apartments of named plaintiffs Walsh and Mack are individual considerations that affect only the calculation of damages for the overcharges, but do not render these plaintiffs atypical. (*See Borden v 400 E. 55th St. Assoc., L.P.*, 105 AD3d at 631; *Kudinov v Kel-Tech Constr. Inc.*, 65 AD3d at 482; *Englade v HarperCollins Publs.*, 289 AD2d at 160; *Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d at 139-140.) Defendant's insistence that, based on its own calculations, defendant owes plaintiffs Dugan, D'Yans, Gagnon, Walsh, and Mack no damages for rent overcharges similarly affects only the calculation of damages and is premature. Defendant has premised this contention, moreover, on the rent plaintiffs were charged four years before they commenced these actions, as the base date rent, even though that rent has not been determined the legal regulated rent that was to have been charged. (*See Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin.*, 15 NY3d at 365-366; *Thornton v Baron*, 5 NY3d at 180-181 and n 1; *72A Realty Assoc. v Lucas*, 101 AD3d at 402; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 200.)

### 5. Superiority

Class members' numerosity and the expenses entailed in bringing separate, individual actions outweigh any anticipated difficulties in managing a class action. Judicial resources would be taxed much more heavily in managing such numerous individual actions. (CPLR 902.) Development and application of a formula for calculating overcharges and determination of the limitations on claims, the preclusive effect of any prior DHCR adjudications involving the parties, and the legality of decontrol in proportion to a reduction in tax benefits are more efficiently and aptly undertaken on a classwide rather than an individual basis. Because these questions relating to liability are common and predominate for the entire class, a class action on liability conserves judicial resources even if determining damages requires the use of subclasses or a special master to assess individualized facts. (CPLR 906.)

In individual instances the amount of overcharges also may result in damages so prohibitively low as to discourage class members from pursuing their claims. A class action provides a means of compensation for those individuals. (*Nawrocki v Proto Constr. & Dev. Corp.*, 82 AD3d 534, 536 [1st Dept 2011]; *Drizin v Sprint Corp.*, 12 AD3d 245, 246 [1st Dept 2004].)

■ In sum, the factors enumerated in CPLR 902 weigh in favor of proceeding as a class action against defendant on behalf of: all past and current tenants of London Terrace Gardens who have been charged or continue to be charged deregulated rents during defendant's receipt of J-51 tax benefits under New York Real Property Tax Law § 489 (1) (a) and New York City Administrative Code §§ 11-243 and 11-244. Therefore the court grants certification of a plaintiff class defined above. (CPLR 902, 903.)

### VI. DHCR's Motion to Dismiss Defendant's Third-Party Action

DHCR's province is to administer the Rent Stabilization Law and Rent Control Law through implementing regulations and through adjudicating claims under those statutes and regulations. Defendant's third-party action against DHCR seeks declaratory and related injunctive relief binding on DHCR to the following effect. (1) The Court of Appeals' interpretation in *Roberts* of the Rent Stabilization Law may not be applied retroactively, such that the rents defendant charged and continues to charge are permitted under the rent-stabilization statutes and regulations. (2) Retroactive application of *Roberts*

is an unconstitutional regulatory taking without fair notice under the Takings Clause and the Due Process Clause of the Fifth Amendment to the United States Constitution. (3) Defendant is entitled to rescind its participation in the J-51 program. (4) Alternatively to (1) through (3), upon the expiration of defendant's J-51 tax benefits, defendant no longer will be subject to any rent-stabilization laws triggered by the J-51 program. DHCR moves to dismiss defendant's third-party actions on the grounds that there is no viable controversy between defendant and DHCR for which relief may be granted and that defendant seeks to prohibit DHCR from lawfully pursuing its statutory duties.

A. Defendant Seeks Declaratory and Injunctive Relief Regarding Issues Already Decided

As discussed above, the Court of Appeals' ruling in *Roberts*, as an original judicial construction of a statute, applies retroactively. (*Roberts v Tishman Speyer Props., L.P.*, 89 AD3d at 445-446; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 197-98.) The *Roberts* ruling created neither a new principle of law, nor an arbitrary change in the law, for which retroactive application implicates the Takings or Due Process Clauses. (*Matter of London Terrace Gardens, L.P. v City of New York*, 101 AD3d at 31; *Roberts v Tishman Speyer Props., L.P.*, 89 AD3d at 445-446.) Defendant was not deprived of fair notice because it relied on DHCR's faulty interpretation of a current statute, the plain text of which was readily available for defendant to read and interpret for itself, and which was foreseeably susceptible of the courts' different interpretation according to that text. (*Matter of London Terrace Gardens, L.P. v City of New York*, 101 AD3d at 31; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 198.)

Because the *Roberts* ruling's retroactive application already has been decided, the constitutionality of such retroactivity is not in controversy, it is constitutional, and defendant's claim that it is not is untenable. Because the Appellate Division already has decided, in this instance directly as to defendant itself, that it may not rescind its participation in the J-51 program (*London Terrace Gardens, L.P. v City of New York*, 101 AD3d at 30), that decision not only is binding precedent, but collaterally estops defendant from obtaining any contrary relief here. (*Tydings v Greenfield, Stein & Senior, LLP*, 11 NY3d 195, 199 [2008]; *City of New York v Welsbach Elec. Corp.*, 9 NY3d 124, 128 [2007]; *Buechel v Bain*, 97 NY2d 295, 303-304 [2001]; *Martin v Safeco Ins. Co. of Am.*, 19 AD3d 221 [1st Dept 2005].)

## B. There is No Viable Controversy between Defendant and DHCR

Defendant insists that DHCR is a necessary party for the conclusive determination of London Terrace Gardens's apartments' regulatory status under the rent-stabilization statutes. Given the resolution of whether the *Roberts* ruling applies retroactively and whether defendant may rescind its participation in the J-51 program, all of defendant's remaining claims regarding the permissibility of its deregulation of apartments and whether defendant has overcharged rent constitute a controversy between defendant and the plaintiff class *only*.

As an administrative agency with quasi-adjudicative authority, DHCR shares concurrent jurisdiction with the court over issues relating to rent regulation, including the determination of regulated rent and the compensation and penalties for rent overcharges. (9 NYCRR 2506.1 [g]; *Downing v First Lenox Terrace Assoc.*, 107 AD3d at 88; *Dugan v London Terrace Gardens, L.P.*, 34 Misc 3d 1240[A], 2011 NY Slip Op 52501[U], *5, *affd* 101 AD3d 648 [2012].) The court's prior decision nonetheless refused to cede primary jurisdiction to DHCR to determine the issues raised in this action, as many of them are within the court's exclusive jurisdiction and beyond DHCR's authority to adjudicate. (*Dugan v London Terrace Gardens, L.P.*, 34 Misc 3d 1240[A], 2011 NY Slip Op 52501[U], *7-8 [2011].)

Nor has DHCR taken any position on the regulatory status of defendant's apartments or made any determination regarding the parties or issues in this action in the wake of *Roberts v Tishman Speyer Props., L.P.* (13 NY3d 270 [2009]). (Aff of Sheldon Melnitsky ¶¶ 31-33.) DHCR will have no jurisdiction or authority to make any determination regarding the parties or issues in this action unless and until either a plaintiff class member or defendant institutes a proceeding before the agency. (Administrative Code § 26-516 [b]; 9 NYCRR 2506.1 [a], [g].) Once DHCR makes a determination affecting defendant's rights or interests, defendant may seek judicial review of DHCR's determination after exhausting available administrative remedies or upon demonstrating that pursuit of such remedies would be futile. (CPLR 7801; *Matter of Contest Promotions-NY LLC v New York City Dept. of Bldgs.*, 93 AD3d 436, 437 [1st Dept 2012]; *Matter of People Care Inc. v City of N.Y. Human Resources Admin.*, 89 AD3d 515, 516 [1st Dept 2011]; *Amazon.com, LLC v New York State Dept. of Taxation & Fin.*, 81 AD3d 183, 203 [1st Dept 2010]; *Wong v Gouverneur Gardens Hous. Corp.*, 308 AD2d 301, 305 [1st Dept 2003].)

Res judicata and collateral estoppel will apply to a final determination of the rights and obligations of the plaintiff class and defendant raised by their claims in this action. (*Tydings v Greenfield, Stein & Senior, LLP*, 11 NY3d at 199; *Landau, P.C. v LaRossa, Mitchell & Ross*, 11 NY3d 8, 12 [2008]; *Matter of Josey v Goord*, 9 NY3d 386, 389-390 [2007]; *City of New York v Welsbach Elec. Corp.*, 9 NY3d at 128.) This court's adjudication of this action therefore will preclude plaintiff class members and defendant from relitigating these claims before DHCR and will bind DHCR to the extent of that preclusion, as long as the parties had a full and fair opportunity to litigate the claims here, and the court rendered a final determination on the merits. (*Matter of Finkel v New York City Hous. Auth.*, 89 AD3d 492, 493 [1st Dept 2011]; *Zito v Fischbein Badillo Wagner Harding*, 80 AD3d 520, 521 [1st Dept 2011]; *Ginezra Assoc. LLC v Ifantopoulos*, 70 AD3d 427, 429 [1st Dept 2010].)

An action seeking a declaratory judgment regarding the parties' legal rights and relationship requires a controversy capable of resolution by the judiciary (CPLR 3001; *Megibow v Condominium Bd. of Kips Bay Towers Condominium, Inc.*, 38 AD3d 265, 266 [1st Dept 2007]; *Sokoloff v Town Sports Intl.*, 6 AD3d 185, 186 [1st Dept 2004]; *New York County Lawyers' Assn. v State of New York*, 294 AD2d 69, 72 [1st Dept 2002]), involving an actual, genuine dispute of law or facts between adverse parties, each with a stake in the outcome. (*Thome v Alexander & Louisa Calder Found.*, 70 AD3d 88, 99-100 [1st Dept 2009]; *Long Is. Light. Co. v Allianz Underwriters Ins. Co.*, 35 AD3d 253 [1st Dept 2006]; *Mt. McKinley Ins. Co. v Corning Inc.*, 33 AD3d 51, 57 [1st Dept 2006].) Defendant does not challenge any regulations promulgated by DHCR or conduct by DHCR against defendant. Defendant does not allege that DHCR has taken any actions at all or that its inaction has harmed defendant.

The regulatory status of defendant's apartments and its liability for deregulating them while receiving J-51 tax benefits are disputed issues in which only defendant and the plaintiff class hold a genuine stake. Even though defendant claims that any liability of defendant for the deregulation of plaintiffs' apartments derives from defendant's reliance on a DHCR regulation, defendant does not seek contribution or indemnification from DHCR.

Nor does DHCR hold any stake in the outcome of this action or indicate any interests adverse to defendant regarding its rent regulatory status or liability to plaintiffs. As there is no genuine

dispute between DHCR and defendant, DHCR's inclusion in this action as a third-party defendant will not affect the determination of the rights and obligations between defendant and the plaintiff class. (*See Matter of New York Times Co. v City of N.Y. Police Dept.*, 103 AD3d 405, 407 [1st Dept 2013]; *Mt. McKinley Ins. Co. v Corning Inc.*, 33 AD3d at 57; *Matter of Walker v Pataki*, 266 AD2d 40, 41 [1st Dept 1999].)

C. Defendant's Alternative Claim for Relief is Not Yet Ripe

A fundamental requirement for declaratory relief is a controversy that is ripe for adjudication. (CPLR 3001; *Cuomo v Long Is. Light. Co.*, 71 NY2d 349, 354 [1988]; *see City of New York v State of New York*, 76 NY2d 479, 485 [1990].) Defendant's claim for declaratory relief regarding its regulatory status upon the expiration of its participation in the J-51 tax benefits program is premature for judicial adjudication because the effect of any such declaration by the court would be contingent on future events that may not occur. (*Cuomo v Long Is. Light. Co.*, 71 NY2d at 354; *Empire 33rd LLC v Forward Assn. Inc.*, 87 AD3d 447, 448 [1st Dept 2011].)

Whether defendant's apartments will be subject to rent stabilization is contingent first on the determination in this litigation regarding the apartments' past and current regulatory status and defendant's liability while defendant received J-51 tax benefits, which are viable claims between defendant and the plaintiff class. (*See* Administrative Code § 26-405 [c]; *72A Realty Assoc. v Lucas*, 101 AD3d at 402 n; *Matter of 73 Warren St., LLC v State of N.Y. Div. of Hous. & Community Renewal*, 96 AD3d 524, 527, 529 [1st Dept 2012]; *Gersten v 56 7th Ave. LLC*, 88 AD3d at 194.) At this stage, there is no controversy between defendant and DHCR. (*See Matter of 73 Warren St., LLC v State of N.Y. Div. of Hous. & Community Renewal*, 96 AD3d at 529.) When defendant's J-51 tax benefits expire, and defendant no longer participates in the program, defendant may petition DHCR to deregulate defendant's apartments. If and when defendant's claims are ripe for adjudication, defendant then may seek judicial review of DHCR's determinations regarding these apartments' regulatory status. (*Id.* at 529-530.)

D. Conclusion

■ In sum, the requisite controversy between defendant and DHCR is absent. Defendant's third-party action against DHCR presents no factual or legal basis to grant defendant any of the relief sought against DHCR. (CPLR 3001; *Sokoloff v Town Sports Intl.*, 6 AD3d at 186.) Absent any genuine factual or legal

dispute between defendant and DHCR, the court grants DHCR's motion to dismiss defendant's third-party complaint in each action. (CPLR 3211 [a] [7].)

## VII. Disposition

For the foregoing reasons, the court grants plaintiffs' motions for consolidation and for class certification. (CPLR 602 [a]; 902.) The court certifies a plaintiff class of all past and current tenants of London Terrace Gardens who have been charged or continue to be charged deregulated rents during defendant's receipt of J-51 tax benefits under Real Property Tax Law § 489 (1) (a) and Administrative Code §§ 11-243 and 11-244. (CPLR 902, 903.) The court also grants DHCR's motion to dismiss defendant's third-party complaint. (CPLR 3211 [a] [7].) The caption of this action shall be:

————————————————————————x

WILLIAM DUGAN, MARSHA D'YANS, GEORGETTE GAGNON, LOWELL D. KERN, MICHAEL MCCURDY, JOSE PELAEZ, TRACY SNYDER, MICHAEL J. WALSH, LESLIE M. MACK, ANITA ZITIS, and JAMES DOERR, on Behalf of Themselves and All Other Persons Similarly Situated,

Index No. 603468/2009

Plaintiffs

- against -

LONDON TERRACE GARDENS, L.P.,